# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| CresCom Bank, successor by merger to Community FirstBank, <br><br> Plaintiff, <br><br> v. <br><br> Edward L. Terry, Harris Street, LLC, n/k/a CCT Reserve, LLC; Sugarloaf Marketplace, LLC; and CCT Reserve, LLC <br><br> Defendants. | Case No.: 2:12-cv-00063-PMD <br><br> **ORDER** |

This matter is before the Court upon Defendant Edward L. Terry's ("Terry") Motion to Dismiss or, in the Alternative, to Transfer Venue. For the reasons set forth herein, the Court denies Defendant's Motion.

## BACKGROUND

This case involves loans CresCom Bank ("the Bank") made to Harris Street, LLC; Sugarloaf Marketplace, LLC; and CCT Reserve, LLC and the guarantees that Terry executed guarantying payment of those loans.

Terry "own[s] a membership interest in" and is "the sole member of CCT Reserve, LLC." Terry Aff. at ¶3. Additionally, on February 4, 2011, Harris Street and Sugarloaf merged into CCT Reserve. Terry Aff. at ¶ 4-5. At the time of the making of the relevant loans, Harris Street was a South Carolina limited liability company, and the original loan was made in part for the purpose of purchasing and/or improving tracts of land in Berkeley and Charleston Counties, South Carolina. Harris Street was terminated as a South Carolina LLC sometime in 2010 and re-

1

formed as a Delaware entity authorized to do business in South Carolina. Sugarloaf was formerly a Georgia limited liability company with its sole place of business in Marietta, Georgia. CCT Reserve, LLC's sole place of business is located in Marietta, Georgia. Terry Aff. ¶ 3.

Plaintiff brought this action against Defendants asserting five causes of action. The first and second causes of action are claims against Harris Street, LLC, n/k/a CCT Reserve, LLC ("Harris Street") for nonpayment of note #-----2718 and note #-----2622. The third cause of action is a suit on note #-----2911 brought against Sugarloaf Marketplace, LLC ("Sugarloaf"). The fourth cause of action is a suit on note #-----3572 brought against Defendant CCT Reserve, LLC ("CCT Reserve"). Harris Street, Sugarloaf, and CCT Reserve—the named Defendants in the first four causes of action—have not been served with the Complaint and the 120 days has passed.

The fifth cause of action asserts a breach of Guaranty against Terry, a citizen and resident of Florida. *See* Compl. ¶ 2. Plaintiff alleges that Terry "guaranteed the payment and performance of each and every debt, liability and obligation of every type and description which" Harris Street, Sugarloaf, and CCT Reserve owed to the Bank at any time. Compl. ¶¶ 51-53.

## ANALYSIS

### I.     Waiver of Fed. R. Civ. P. 12(b)(2) defense

Terry was served with the Complaint on March 30, 2012. He timely filed his Answer to the Complaint on April 19, 2012. Terry expressly stated in his Answer that it was being filed "subject to the Motion to Dismiss filed or to be filed in this action." Answer, at 1. The second defense in the Answer asserts that, pursuant to Fed. R. Civ. P. 12(b)(2), the Court should dismiss the Complaint against Terry because the Court lacks personal jurisdiction over him. *See* Answer,

2

at ¶ 26.  Additionally, the third defense in the Answer specifically asserts that "[t]his Court lacks jurisdiction over the person of this Defendant." Answer, at ¶ 27.  On May 4, 2012, Terry filed the instant Motion to Dismiss or, in the Alternative, to Transfer Venue.  Plaintiff argues that Terry was required to file any motion to dismiss for lack of personal jurisdiction before his Answer. Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss, at 3 (citing  Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.")).    However, Fed. R. Civ. P. "12(h) contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance." *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002)(citing *Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 46 (4th Cir. 1968)).  In this case, Terry did not fail to make personal jurisdiction objections at the time of his appearance.  In fact, he asserted the objection multiple times in his Answer and, before engaging in any other aspect of the litigation process, he filed the instant Motion to Dismiss fully explaining his personal jurisdiction arguments.  By including the defense of lack of personal jurisdiction in his Answer and filing a motion to dismiss before engaging in the litigation process, Terry asserted the defense and did not waive it.  *Compare*, *Brokerwood Intern. (U.S.), Inc. v. Cuisine Crotone, Inc.,* 104 Fed. Appx. 376, 379 (5th Cir. 2004) (holding that a defendant did not waive its personal jurisdiction defense because the defendant "complied with Rule 12(h)(1) by including its objections to personal jurisdiction in its answer") *with Yeldell v. Tutt*, 913 F.2d 533 (8th Cir. 1990) (finding that "their conduct in delaying consideration of this threshold issue manifests an intent to submit to the court's jurisdiction" when the defendants asserted lack of personal jurisdiction in their answer, proceeded through discovery, motions, a trial, and post-trial motions, without raising their

3

objections to personal jurisdiction, and attempted to raise the raise issue on appeal) *and Bel-Ray Co., Inc. v. Chemrite Ltd.*, 181 F.3d 435, 443-44 (3d Cir.1999) (finding that defendants had waived the defense even though they asserted it in their answer because they waited until after their motion for summary judgment on their counterclaim had been denied).

## II.     **Personal Jurisdiction:**

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). When a court addresses the issue of jurisdiction on the basis of pleadings and supporting legal memoranda without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989). In deciding such a motion, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*. at 676.

To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause.[1] *Foster*, 278

---

[1] South Carolina's long-arm statute provides that :

   (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:

      (1) transacting any business in this State;
      (2) contracting to supply services or things in the State;

4

F.3d at 414. Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether Defendants have "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

### (a) Minimum Contacts:

The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group v. Centricut*, 126 F.3d 617, 623-24 (4th Cir. 1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 416. In this case, the Bank contends that Terry was engaged in "substantial" or "continuous and systematic" activities in South Carolina such as to subject him to general jurisdiction in this state. However, the Court finds that Terry's contacts are not continuous and systematic, but rather are insufficient to subject him to general jurisdiction in

---

(3) commission of a tortious act in whole or in part in this State;
(4) causing tortious injury or death in this State by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
(5) having an interest in, using, or possessing real property in this State;
(6) contracting to insure any person, property, or risk located within this State at the time of contracting;
(7) entry into a contract to be performed in whole or in part by either party in this State;or
(8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. CODE 36-2-803(a).

South Carolina. Thus, the Court needs only determine whether Terry's contacts related to this case are sufficient to subject him to specific jurisdiction in South Carolina.

A defendant has minimum contacts with a jurisdiction if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1990). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In determining the existence of minimum contacts, the court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in the Plaintiff's favor. *See, e.g., Precept Med. Products, Inc., v. Klus,* 282 F. Supp. 2d 381, 385 (W.D.N.C. 2003) ("for the purposes of a Rule 12 (b)(2) motion, the Court will accept the Plaintiff's version of disputed facts").

As to Terry, the Complaint alleges that "[u]pon information and belief, Defendant Edward L. Terry is a citizen and resident of the State of Florida." Compl. ¶ 2. Terry executed and delivered to the Bank, multiple guaranties, guarantying the payment and performance of all debts that Harris Street, Sugarloaf, and CCT Reserve owed to Plaintiff. Compl. ¶¶ 51-53. "[T]he mere execution of a guaranty does not invariably subject one to personal jurisdiction in a foreign forum." *State Bank of Alleghenies v. Hudnall*, No. 94-1809, 1995 WL 469445, at *2 (4th Cir. Aug. 9,1995) (finding that although executing a guarantee in a forum state may not automatically subject one to jurisdiction, "the nature and level of [the guarantor's] contacts with [the forum state] are sufficient to establish jurisdiction in this particular case"). In *State Bank of*

*Alleghenies*, the court found that the defendant had sufficient minimum contacts based on the following:

> [I]t appears further that George Hudnall acted with at least apparent authority as Gilman Hudnall's agent. The guarantor himself called the bank in Virginia at least once to inquire about collateral, provided his financial statement for the Virginia banks consideration, and ultimately signed a Virginia loan guaranty for a Virginia business. Accordingly, we find sufficient contacts between the guarantor and Virginia to satisfy the requirements of personal jurisdiction.

*Id.* The same type of activity the court looked to in that case has been alleged by Plaintiff here. For example, Terry signed all of the relevant loan agreements as an authorized signatory for Harris Street, Sugarloaf, and CCT Reserve. *See* Hujik Aff. at ¶ 11 ("Terry executed all agreements relevant to the suit, including the underlying obligations, as an individual or as authorized signatory for Harris Street, LLC; Sugarloaf Marketplace, LLC; and CCT Reserve, LLC, among other related entities."). Also "[a]t all times relevant hereto, Terry has been an authorized signatory on multiple accounts at the Bank, held in the name of entities in which he holds an interest." Hujik Aff. at ¶ 14.[2] Additionally, Plaintiff alleges that "Terry has instituted

---

[2] The only visit specifically discussed in the affidavit was Terry's most recent visit on January 4, 2012. Hujik Aff at ¶ 18. The January 4, 2012 meeting occurred after the loans were in default. The Bank's claim against Terry arose when the loans were in default. Therefore, Hujik's statement that Terry traveled to South Carolina and met with the Bank on January 4, 2012 is irrelevant to the jurisdictional inquiry. *See Glynn v. EDO Corp.* 536 F.Supp.2d 595, 606 n.15 (D.Md. 2008) ("[I]t is axiomatic that "[w]hether general or specific jurisdiction is sought, a defendant's 'contacts' with a forum state are measured as of the time the claim arose," (quoting *Hardnett v. Duquesne Univ.,* 897 F.Supp. 920, 923 (D.Md.1995))). However, his statements that he communicated with the Bank and visited the Bank on multiple occasions to discuss the obligations under the notes, mortgages, and guaranties are not irrelevant. The Court is required to construe Plaintiff's allegations in the light most favorable to Plaintiff, assume the allegations are credible, and draw the most favorable inferences for the existence of jurisdiction. Clearly, the statements refer to multiple visits and communications regarding the loans. The fact that one visit that is specifically discussed later in the affidavit occurred after the claim had arisen does not mean that all of the visits and communications occurred after the claim arose. In fact, such a reading of Hujik's affidavit makes no sense in light of the fact that the Bank issued multiple loans, modifications of loans, and guarantees all signed by Terry.

7

telephone and other communications directly to officers and employees of the Bank, including [Hujik], on multiple occasions with regard to the obligations under the Notes, related mortgages, and the Guaranties. Hujik Aff. at ¶ 12. "Terry has made personal visits to the Bank in Charleston to meet with officers, agents, and/or employees of the Bank, including [Hujik], and has met on multiple occasions with the same relating to obligations under the notes, mortgages, and guaranties. Hujik Aff. at ¶ 13. These contacts are sufficient under *State Bank of Alleghenies* for this Court to assert jurisdiction over Terry.[3]

Terry attempts to distinguish this case from *State Bank of Alleghenies* by arguing that in that case the guarantor was the brother-in law of the in state borrower, the loan benefited the borrower's business, and "[t]he fact that the appellant guarantor and the in-state borrower shared a close familial bond at least posed the potential that the guarantor stood to gain from his sibling's business success." See Terry's Mot. to Dismiss, at 8 (quoting *State Bank of Alleghenies*, 1995 WL 469445 at *2). At the time of the execution of the guarantees, the three entities involved were all in-state borrowers—Harris Street was "registered as a domestic limited liability company with the South Carolina Secretary of State," Hujik Aff at ¶ 8, and Sugarloaf and CCT Reserve, although not South Carolina LLCs, were "authorized to do business by the South Carolina Secretary of State and upon information and belief, [were] conducting business in the State of South Carolina." Hujik Aff. at ¶¶ 9-10. It is unclear exactly what interest Terry held

---

[3] Terry argues that the "corporate shield doctrine" provides that acts of any corporate officer or agent cannot be the basis for personal jurisdiction over that person. However, "[i]n *Columbia Briargate* [*Co. v. First Nat'l Bank*, 713 F.2d 1052 (4th Cir. 1983)] [the Fourth Circuit Court of Appeals] made clear that the fiduciary shield doctrine does not apply to protect a corporate agent where, as here, jurisdiction is asserted under a long-arm statute that extends its reach to the limits of the Due Process Clause." *Korean Video Broad. Corp. v. D& H Visual Art, Inc, et. al*, No. 94-2556, 1995 WL 541711 (4th. Cir. Sep. 13, 1995).

8

in each of those entities, but it is clear that Terry stood to gain from the loans as he owns an interest in CCT Reserve and the other two entities merged into CCT Reserve.

In addition to the types of contacts discussed above, courts will consider a choice of law provision in a contract in determining whether a defendant purposefully availed himself of the benefits and protections of forum state law. *See Coggeshall v. Reprod. Endocrine Assoc. of Charlotte,* 655 S.E.2d 476, 480 (S.C. 2007) ("Although not controlling, a choice of law provision is relevant in deciding whether to exercise personal jurisdiction.") (citation omitted). Each of the guarantee agreements at issue in this case provided that it would be governed by the laws of the state in which it was executed. *See* Compl., Guarantee Agreements, Ex. O, P and Q (all stating that "[t]his guaranty shall be governed by the laws of the State in which it is executed"). The guaranty contracts are captioned "Charleston, SC" and nowhere on the contracts did anyone note that they were being executed anywhere other than South Carolina. *See* Compl., Guarantee Agreements, Ex. O, P and Q. Additionally, Plaintiff has alleged that these guarantees were executed in South Carolina. *See* Compl. at ¶ 7 ("All of the contracts incorporated herein were made, executed, and intended to be performed in the State of South Carolina") and Compl. at ¶¶ 51, 52, and 53 (incorporating by reference all of the Guaranties Terry signed). Terry disagrees and claims that "[t]he guaranty contracts were signed and executed in the State of Georgia." Terry Aff. ¶ 6. However, upon a motion to dismiss the Court looks to whether Plaintiff has carried its burden of alleging jurisdictional facts, not whether Defendant disagrees with the factual allegations. Plaintiff's well-pled allegation, which is only disputed by Terry's own word, is sufficient at this point. Therefore, in addition to Terry's other contacts with the state, the fact that he signed a contract which allegedly is governed by South Carolina law makes an even more

9

compelling case that Terry purposefully availed himself of the benefits and protections of South Carolina law.

### (b) Fair play and Substantial Justice:

Having determined that Defendant has sufficient minimum contacts with South Carolina to allow for specific jurisdiction, the Court must next consider whether the exercise of jurisdiction in this case "comport[s] with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). In determining whether the exercise of jurisdiction comports with 'fair play and substantial justice, the court evaluates the following factors:

> [ (1) ] the burden on the defendant, [ (2) ] the forum State's interest in adjudicating the dispute, [ (3) ] the plaintiff's interest in obtaining convenient and effective relief, [ (4) ] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [ (5) ] the shared interest of the several States in furthering fundamental substantive social policies.

*Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209*, 217 (4th Cir.2001) (quoting *Burger King*, 471 U.S. at 477)). "More generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* (quotations and citations omitted). Thus, for the exercise of jurisdiction to be constitutionally reasonable the "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen*, 444 U.S. at 297).

As to the first factor, Terry argues that litigating the case in South Carolina will be burdensome because he is not a resident, he will have to travel to South Carolina, his records are in Georgia, and the relevant witnesses reside in Georgia. The Court finds that any burden on the Defendant is reasonable. In this case, traveling to a different state several times is an

unavoidable, minimal burden that one of the parties must shoulder. Requiring Terry, who guaranteed loans from a South Carolina bank, to shoulder the burden of travelling from Florida or Georgia to South Carolina is not unreasonable or unfair.

As to the second factor, South Carolina has an important interest in adjudicating a dispute involving guarantees of loans issued by one of its banks for the purpose of developing land in South Carolina and secured by property in South Carolina.

As to the third factor, Terry argues that requiring the Bank to litigate its claims in Georgia would not be unfair because the Bank knew that the business operations of the corporate entities were located in Georgia when it made the loan, and the Bank would be able to obtain convenient and effective relief in that forum. However, as is discussed above, it is equally fair to require Terry to litigate in South Carolina.

Terry does not separately argue the last two factors—the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several States in furthering fundamental substantive social policies—and the Court is unaware of any information in this case regarding those factors that would affect its determination on the issue. Therefore, the Court holds that the exercise of jurisdiction in this case comports with fair play and substantial justice.

### III.     Motion to Transfer Venue under 28 U.S.C. § 1404(a):

In the alternative, Terry seeks a transfer of venue to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). That section states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision "is intended to place discretion in the district court to adjudicate motions

11

for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)).  In determining whether to exercise that discretion, "the court must consider whether venue is proper in the proposed transferee district.  If the proposed venue is proper, the court then considers whether transfer is in the interest of justice and will serve the convenience of the parties and witnesses." *United States v. $78,850.00 in U.S. Currency,* No. 2:05-1752-PMD, 2006 WL 2384709, at *3 (D.S.C. Mar.9, 2006) (citation omitted).  Therefore, before considering whether a transfer is appropriate, the Court must determine whether venue would be proper in the Northern District of Georgia.

Under 28 U.S.C. § 1391(a), a civil action based only on diversity of citizenship may be brought in: (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.  In this case, Terry is the only defendant who has been served and the deadline for service has passed.  Additionally, Terry is a citizen and resident of Florida, and Plaintiff's allegations do not indicate that a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Georgia.  Therefore, venue is not proper in the Northern District of Georgia.

12

## **CONCLUSION**

For the forgoing reasons, it is **ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue is **DENIED**.

*[signature]*
PATRICK MICHAEL DUFFY
United States District Judge

**July 31, 2012**
**Charleston, SC**

13