IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| CresCom Bank, successor by merger to Community FirstBank | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 2:12-cv-00063-PMD |
| v. | ) ) | **ORDER** |
| Edward L. Terry, Harris Street, LLC, n/k/a CCT Reserve, LLC; Sugarloaf Marketplace, LLC; and CCT Reserve, LLC | ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court upon Defendant Edward L. Terry's ("Terry") Motion to Stay Proceedings ("Motion"). For the reasons that follow, the Court will not stay the action in its entirety at this juncture.

**BACKGROUND**

On January 5, 2012, Plaintiff CresCom Bank ("CresCom") sued Defendant CCT Reserve, LLC ("CCT") to recover on four separate loans secured by promissory notes and mortgages executed by CCT and its predecessor companies.[1] CresCom also sued Terry as the guarantor of the promissory notes.

On August 31, 2012, CCT filed a Chapter 11 Petition in the United States Bankruptcy Court for the Northern District of Georgia. As part of the bankruptcy proceedings, CCT filed a plan of reorganization that provides for treatment of the claims asserted in this action by CresCom. Under the proposed plan, CCT would convey to CresCom all of the real estate or

---

[1] On February 4, 2011, Defendants Harris Street, LLC, and Sugarloaf Marketplace, LLC, were merged into CCT Reserve, LLC.

1

collateral securing CresCom's loans at issue in this case at values to be determined by the bankruptcy court. The value of the collateral as established by the bankruptcy court would be credited against CresCom's claims and would constitute a full or partial satisfaction of CresCom's claims. The proposed plan also requires Terry to personally contribute cash for an additional infusion of capital so as to allow CCT to pay certain tax and unsecured claims.

On January 8, 2013, Terry filed this Motion to Stay, requesting that this Court extend the automatic stay of 11 U.S.C. § 362 to cover the instant action until completion of CCT's bankruptcy proceedings. CresCom filed a brief in opposition, and Terry filed a reply brief. Neither Terry nor CCT has sought any modification of the automatic stay from the bankruptcy court.

## JURISDICTION

This Court has jurisdiction to hear this matter under 28 U.S.C. § 1334. The Court's jurisdiction is concurrent with that of the CCT bankruptcy court. *U.S. Dep't of HUD v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 927 n.11 (4th Cir. 1995) (finding that the district court had concurrent jurisdiction with the bankruptcy court to determine the effect of the bankruptcy proceeding on the district court's case).

## ANALYSIS

Section 362(a) of the Bankruptcy Code provides that the filing of a petition for bankruptcy operates as a stay against all entities in any litigation against the debtor that commenced prior to the filing of the petition. 11 U.S.C. § 362(a)(1). This automatic stay provision applies to judicial proceedings and enforcement of judgments against only the debtor, not third party defendants or co-defendants. *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121

(4th Cir. 1988); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). Thus, CCT's filing for bankruptcy automatically stayed CresCom's action against CCT, but not against Terry.

The Fourth Circuit has found, however, that in "unusual circumstances," a "bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants." *Piccinin*, 788 F.2d at 999. The court explained that an unusual circumstance "arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* In *Piccinin*, the debtor manufacturer faced thousands of lawsuits involving a defective product. *Id.* at 1008. The court upheld a preliminary injunction staying litigation against the debtor's codefendants, finding that permitting lawsuits to go forward against the codefendants likely would deplete the amount of insurance money available in the debtor's estate "to the detriment of the debtor's creditors as a whole." *Id.*

Terry argues that unusual circumstances exist in this case because he is the sole member of CCT, and as such, he is the only person who can effectively carry out CCT's plan of reorganization. He contends that without a stay, CCT's reorganization would suffer because he would be unable to devote his full attention and money toward it. He further maintains that a monetary judgment against him would make it financially impossible for him to contribute cash for an infusion of capital into CCT, again compromising CCT's efforts to reorganize. Terry also notes that under Georgia law—the state in which he contends he executed the guaranty agreements—he would be entitled to bring an indemnification action against CCT for any payment he makes as guarantor, which action would then impact CCT's estate. *See* Ga. Code. Ann. § 10-7-41. Thus, Terry concludes that his relationship with CCT creates the "unusual circumstances" necessary for an extension of the bankruptcy stay to a non-debtor codefendant.

3

The Court is not persuaded that unusual circumstances are present in this case. Unlike the debtor in *Piccinin*, CCT is not facing thousands of lawsuits. Furthermore, a judgment against Terry would not deplete the existing bankruptcy estate as would have a judgment against the codefendants in the *Piccinin* case. *See Credit Alliance*, 851 F.2d at 121-22 ("It is unnecessary to stay proceedings . . . against the non-bankrupt guarantor to protect [the debtor] or to prevent the dissipation of its assets, since neither [the debtor] nor its estate is jeopardized by the judgment against [its guarantor]."). Far from unusual, CresCom merely seeks to continue its action against a non-debtor guarantor. The guaranties at issue are unconditional guaranties of payment and primary obligations of Terry in his individual capacity. "Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt." *Credit Alliance*, 851 F.2d at 121. "The very purpose of a guaranty is to assure the creditor that in the event the debtor defaults, the creditor will have someone to look to for reimbursement." *Id.* at 122 (quotation and alterations omitted). This purpose "would be frustrated by interpreting § 362 so as to stay [the creditor's] action against the non-bankrupt guarantor when the defaulting debtor petitioned for bankruptcy." *Id.* Moreover, a statutory right to bring an action for indemnification is not sufficient to justify extension of the automatic stay. *See Doyle v. Fleetwood Homes of Va., Inc.*, C.A. No. 2:08-1442, 2009 WL 1210697, at *2 (S.D. W. Va. Apr. 30, 2009) ("Simply because [the non-debtor codefendants] may be entitled to contribution or indemnity from [the debtor] does not call for expansion of the stay imposed by § 362(a)(1)."). In *Credit Alliance*, the Fourth Circuit refused to expand the automatic stay to include the guarantor of a note despite the fact that the guarantor would be entitled to bring claims for reimbursement through the

bankruptcy proceedings. 851 F.2d at 120-21. The Court fails to see how the instant case differs from *Credit Alliance*.[2]

Under the circumstances of this case, the Court concludes that the question of whether to extend the automatic stay to the present action is most appropriately considered by the bankruptcy court overseeing CCT's bankruptcy proceedings. Terry maintains that CCT's reorganization efforts will be harmed if he is forced to defend the instant suit and if he cannot infuse capital into the company. The bankruptcy court—with its expertise, greater access to financial facts, and jurisdiction to adopt the proposed reorganization plan—is in a superior position to assess the validity of these arguments. Accordingly, the Court will defer to the bankruptcy court's judgment on the matter. *See Chi. Title Ins. Co. v. Lerner*, 435 B.R. 732, 737 (S.D. Fla. 2010) (deferring to the bankruptcy court on the question of extending the automatic stay). Absent an order from the bankruptcy court extending the stay, this action shall proceed.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant Terry's Motion to Stay is **DENIED**.

*[signature]*
PATRICK MICHAEL DUFFY
United States District Judge

**March 7, 2013**
**Charleston, SC**

---

[2] Terry relies on an example the *Piccinin* court provided of an "unusual situation" that might justify extension of the automatic stay: "An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute." *Piccinin*, 788 F.2d at 999. Not only is this portion of the *Piccinin* opinion dictum, but two years later the Fourth Circuit decided *Credit Alliance* and refused to extend the stay despite the fact that the guarantor had the right to bring a claim for indemnification. *Credit Alliance*, 851 F.2d at 120-21. Under the facts of this case, the *Credit Alliance* holding is controlling precedent.