# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| CresCom Bank, successor by merger to Community FirstBank, | )<br>)<br>) |
| Plaintiff, | ) Case No.: 2:12-cv-63-PMD<br>) |
| v. | ) **ORDER**<br>) |
| Edward L. Terry; Harris Street, LLC, n/k/a CCT Reserve, LLC; Sugarloaf Marketplace, LLC; and CCT Reserve, LLC, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

This matter is before the Court on Plaintiff CresCom Bank's motion for supplementary proceedings (ECF No. 102). Seeking to recover a judgment debt from Defendant Edward L. Terry, CresCom asks for several forms of relief against Mr. Terry and his wife, Elaine C. Terry. For the following reasons, CresCom's motion is granted in part and denied in part.

## **BACKGROUND**

After several years of litigation, CresCom obtained a judgment against Mr. Terry in the amount of $1,987,609.55. To date, he has not paid CresCom any of that amount.

CresCom's motion comes after roughly a year of fruitless efforts to find assets of Mr. Terry that are available for levy. It began in March 2016, when this Court gave CresCom a writ of execution covering Mr. Terry's property in South Carolina. CresCom engaged the United States Marshal's Service to execute the writ. After three unsuccessful attempts to serve the writ on Mr. Terry at the Terrys' house in Fernandina Beach, Florida, a marshal returned the writ to CresCom unsatisfied.

Also in March 2016, CresCom served Mr. Terry with a set of post-judgment interrogatories and requests for production. Several weeks later, he answered some of the interrogatories, produced

documents in response to some of the requests, and objected to the remainder of CresCom's written discovery.

Around that time, CresCom also began seeking information and documents from Mrs. Terry about Mr. Terry's assets. Initially, in April 2016, CresCom's lawyers issued a subpoena from this Court commanding Mrs. Terry to produce documents and then appear for a deposition in Charleston, South Carolina. Mrs. Terry's attorney objected to the subpoena and advised that CresCom would need to serve a Florida-issued subpoena upon Mrs. Terry in Florida.[1]

In June 2016, CresCom's attorneys issued another set of subpoenas—one for Mrs. Terry's deposition and another for her to produce documents—that, as demanded, originated in the United States District Court for the Middle District of Florida. CresCom hired a process server to serve Mrs. Terry at a house in Englewood, Florida that Mr. Terry had represented to be their home. As the process server learned, however, the Terrys had actually sold that house. The process server tried several times that summer to serve Mrs. Terry at another of her Fernandina Beach residences, but he was unsuccessful.

In November 2016, CresCom served Mr. Terry with a deposition notice, as well as a subpoena instructing him to appear for a deposition in Charleston and to provide certain information and documents in advance of the deposition. CresCom's requests for information and documents closely tracked the discovery requests CresCom had served on Mr. Terry the previous March. At the end of December, he responded to the subpoena's document request by providing some additional information and documents. He continued, however, to object to most of the requests.

In December 2016, CresCom's counsel issued a third set of subpoenas to Mrs. Terry, this time instructing her to produce documents and appear at a deposition in Charleston the following

---

1. CresCom had also issued a subpoena to take Mr. Terry's deposition at the same place and date it intended to take Mrs. Terry's deposition. In light of the problems with the April 2016 subpoena to Mrs. Terry, CresCom elected to put off Mr. Terry's deposition until it got Mrs. Terry's deposition in Florida scheduled.

2

month. A process server handed the subpoenas to Mr. Terry at a house in Charleston the Terrys use from time to time. Mrs. Terry neither complied with nor objected to the subpoenas. Instead, she made a motion to quash them. The Court denied the motion without prejudice because Mrs. Terry filed it without first talking trying to resolve the matter informally with CresCom. *See* Local Civ. Rule 7.02 (D.S.C.). Mrs. Terry and CresCom's attorneys then discussed the subpoenas via email. Mrs. Terry did not renew her motion.

On January 13, 2017, Mr. Terry appeared in Charleston for his deposition, which the parties suspended without conclusion. A week later, CresCom's counsel sent the Terrys' attorneys a letter renewing CresCom's prior requests for certain documents relating to the Terrys' assets. Mr. Terry produced some of the documents requested in that letter. Mrs. Terry did not produce anything.

The documents and testimony Mr. Terry has provided thus far indicate that he has ownership interests, either directly or indirectly, in real estate across the Southeast, that he has participated in several profit-sharing plans over the past several years, and that Mrs. Terry supports him with assets titled either in her name or in the name of entities she owns. Mr. Terry insists, however, that he has no means of paying CresCom because all his property is either already encumbered by other judgment creditors or are otherwise unavailable to CresCom. CresCom believes Mr. Terry manufactured his purported inability to pay by engaging in illegitimate asset transfers involving Mrs. Terry, their children, and a constellation of entities they own. That belief animates the motion at bar.

## PROCEDURAL HISTORY

CresCom filed its motion for supplementary proceedings on February 24, asking the Court to order Mr. and Mrs. Terry to produce documents, to enjoin Mr. Terry from alienating or damaging any of his property not exempt from execution, and to provide other relief in aid of its collection efforts. On March 10, Mr. and Mrs. Terry filed separate responses in opposition. After the Court

granted a filing extension, CresCom replied to both of those briefs on March 27. Then, with the Court's permission, Mr. and Mrs. Terry filed a joint sur-reply on March 31.

Meanwhile, on March 22, CresCom filed a motion seeking a writ of attachment for Terry's non-exempt property. With extensions from the Court, the parties' briefing on that related motion concluded on June 1. On June 5, the Court denied that motion without prejudice. However, the Court also found that CresCom had made a *prima facie* showing that supplementary proceedings are appropriate. To maintain the status quo pending further review of CresCom's supplementary proceedings motion, the Court issued a temporary injunction barring Mr. Terry from in any way alienating or damaging any non-exempt property he had at that time or may thereafter acquire.

## **DISCUSSION**

### I. Sufficiency of the Execution Attempts

Supplementary proceedings encompass a variety of types of relief. *See Travelers Indem. Co. of Ill. v. Hash Mgmt., Inc.*, 173 F.R.D. 150, 152 (M.D.N.C. 1997) ("Supplementary proceedings in aid of judgment enforcement include garnishment, arrest, mandamus, contempt, appointment of a receiver, and discovery proceedings."). As the Court stated in its June 5 order, CresCom has shown its entitlement to at least some form of relief. Mr. Terry contends, however, that CresCom has not satisfied prerequisites to supplementary proceedings.

Generally, federal courts apply the practice and procedure of the states in which they sit to conduct "proceedings supplementary to and in aid of judgment[ ] and in proceedings on and in aid of execution." Fed. R. Civ. P. 69(a)(1). In South Carolina, a judgment creditor cannot request supplementary proceedings until a writ of execution is returned unsatisfied. *See* S.C. Code Ann. § 15-39-310; *Ag-Chem Equip. Co. v. Daggerhart*, 315 S.E.2d 379, 381 (S.C. Ct. App. 1984). It is undisputed that the Marshal's Service returned this Court's writ of execution to CresCom

completely unsatisfied. Mr. Terry, however, contends that what happened here was not a valid attempt to execute on CresCom's judgment.

Mr. Terry first relies on *Cutting Edge Technologies, Inc. v. Nosyuiaido*, in which a magistrate judge in Maryland recommended vacating a writ of execution issued in the District of Maryland because it targeted property located in Minnesota. No. WDQ-01-2855, 2012 WL 1327969, at *4 (D. Md. Apr. 17, 2012). The magistrate in *Cutting Edge* found the writ was invalid because neither Maryland law nor federal law permitted a court sitting in Maryland to issue writs to execute on property outside that state's borders. *Id.* Mr. Terry argues that under *Cutting Edge*, the attempted execution here was ineffective because this Court cannot issue a writ of execution for property in Florida. That argument stumbles at its factual premise—the writ this Court issued does *not* cover property in Florida. Rather, it very clearly directs the Marshal's Service in this District to execute on property in this District. Unlike the writ in *Cutting Edge*, this one does not improperly target property outside this Court's territory.

Mr. Terry also relies on Federal Rule of Civil Procedure 4.1(a), which confines the service of process other than summonses to "the territorial limits of the state where the district court is located" unless a federal statute allows service beyond those limits. He argues the attempts to serve the writ on him in Florida violated Rule 4.1, making the execution attempt invalid. The Court need not decide, however, whether the marshal's actions violated Rule 4.1(a) or even whether Rule 4.1(a) applies.[2] In the months following the unsatisfied execution attempts, Terry willingly responded to CresCom's substantial post-judgment discovery efforts. He answered interrogatories, produced hundreds of pages of documents, and came to Charleston to testify in a deposition. In other words, Terry voluntarily participated in formal examinations—the primary type of relief judgment creditors

---

2. Under Rule 69(a)(1), federal statutes govern supplementary proceedings to the extent they apply. Courts are divided on whether Rule 4.1 counts as such a statute. *Compare Schneider v. Nat'l R.R. Passenger Corp.*, 72 F.3d 17, 19–20 (2d Cir. 1995) (yes), *with Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409, 414–15 (6th Cir. 1999) (no).

can obtain by applying for supplementary proceedings. A judgment creditor's failure to comply with Rule 4.1(a) is waivable, as are other defects in obtaining supplementary proceedings. *See, e.g.*, *Apostolic Pentecostal Church v. Colbert*, 173 F.R.D. 199, 205 n.20 (E.D. Mich. 1997) (stating judgment debtor waived objection to service of writ of execution by not objecting until after property subject to execution was sold), *aff'd*, 169 F.3d 409 (6th Cir. 1999); *Green v. Bookhart*, 19 S.C. 466, 470 (1883) (stating that a judgment debtor who submits to an examination without objection waives any irregularity in the supplementary proceedings); *cf. Schneider*, 72 F.3d at 19 (holding movant did not waive its objection to service of the writ of execution; motion was filed within days after service of the writ).[3] Here, Mr. Terry waived any objection to CresCom's compliance with it by participating, without objection, in CresCom's post-judgment discovery endeavors for months.[4] *See also* Local Civ. Rule 7.03 (D.S.C.) (stating the Court's expectation that motions should be filed "immediately after the issues raised thereby are ripe for adjudication").

Finally, Mr. Terry cites this Court's decision in *Braunstein v. Pickens* for the proposition that a judgment creditor should not pursue supplementary proceedings until the judgment debtor has failed to voluntarily comply with the judgment. 274 F.R.D. 568, 575 (D.S.C. 2011). To the extent Mr. Terry believes CresCom's motion is premature under *Braunstein*, the Court disagrees. In that case, the plaintiffs requested supplementary proceedings immediately after the judgment became final, leaving the in-debt defendant no time to pay up on his own. *Id.* at 574. Here, in contrast, CresCom's judgment against Mr. Terry has been final for more than a year, and he does not dispute CresCom's assertion that he has failed to pay any of his judgment debt.

---

3. Courts have also held that, under Federal Rule of Civil Procedure 61, the failure to comply with Rule 4.1(a) in the service of a writ of execution that does not comply with Rule 4.1(a) should also be disregarded if the failure did not prejudice the judgment debtor. *See, e.g.*, *Alejandre v. Republic of Cuba*, 42 F. Supp. 2d 1317, 1342 (S.D. Fla.), *vacated on other grounds sub nom. Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.*, 183 F.3d 1277 (11th Cir. 1999); *Apostolic Pentecostal Church*, 173 F.R.D. at 204–05. This Court sees no prejudice to Mr. Terry in the service attempts made here.

4. The Court recognizes that Mr. Terry asserted objections in his discovery responses. His objections, however, related to the discoverability of some of the documents and information CresCom requested. He did not object to the discovery devices themselves and he made no motion to quash them.

In sum, the Court is satisfied that CresCom should have supplementary proceedings. The Court now turns to CresCom's specific requests for relief.

## II. Mr. Terry's Subpoena Responses and Deposition

As mentioned above, Mr. Terry responded in part to CresCom's November 2016 document subpoena but also objected to many of CresCom's requests. CresCom asks the Court to order Mr. Terry to produce the remaining information and documents. Mr. Terry stands by his objections.

Mr. Terry began his responses with two pages of general objections, stating, for example, that he objected to the subpoena to the extent it was unduly burdensome or that it sought information that was either irrelevant or privileged. Such boilerplate objections are improper and thus are overruled. *See, e.g.*, *Patrick v. Teays Valley Trs., LLC*, 297 F.R.D. 248, 256 (N.D. W. Va. 2013) ("[B]oilerplate objections to discovery requests are highly disfavored in the Fourth Circuit."), *aff'd sub nom. Patrick v. PHH Mortg. Corp.*, 298 F.R.D. 333 (N.D. W. Va. 2014); *Mills v. E. Gulf Coast Preparation Co.*, 259 F.R.D. 118, 132 (S.D. W. Va. 2009) ("[B]oilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Huff v. Huff*, No. CIV.A. 1:04-CV-0172, 2006 WL 2356042, at *1 (N.D. Ga. Aug. 15, 2006) (reciting the "general discovery principle[]" that "objections based on conclusory generalizations [are] insufficient").

Second, Mr. Terry objected to many of CresCom's requests on the basis that they sought documents regarding Mrs. Terry. Mr. Terry did not assert spousal privilege, but instead relied on the fact that his wife is represented by separate counsel. Mr. Terry has not provided any authority for the proposition that Mrs. Terry's hiring of an attorney relieves him from producing otherwise discoverable materials that relate to her. The objection is overruled.

Third, Mr. Terry objected to several requests on the ground that they were overly broad and unduly burdensome, in that they sought information and documents "for too long a period of time." (*See generally* Mr. Terry's Resps. CresCom's Subpoena, ECF No. 105-4.) The scope of

7

examination in post-judgment discovery "is very broad, as it must be if the procedure is to be of any value." 12 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3014 (2d ed. 1997); *see also Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014) (stating the rules governing post-judgment discovery are "quite permissive"). With that in mind, the Court finds that, for the most part, Mr. Terry has not shown that the requests to which he objected cover too long a period of time. *See Ashmore v. Allied Energy, Inc.*, No. 8:14-cv-227-JMC, 2016 WL 301169, at *3 (D.S.C. Jan. 25, 2016) ("Generally, the party resisting discovery bears the burden of showing that the requested discovery is irrelevant to the issues or is overly broad, unduly burdensome, unreasonable, or oppressive." (citation and internal quotation marks omitted)). CresCom has demonstrated that Mr. Terry has long been a sophisticated manager of his assets and that CresCom will likely be unable to adequately identify those assets and determine their status without examining documents that go back for several years. The timeframes in CresCom's requests—typically seven to ten years—are therefore appropriate in length. Although producing those documents might prove burdensome, the Court sees nothing undue in that potential burden. Nonetheless, the Court agrees with Mr. Terry that two requests—Numbers 14 and 27—go too far by covering certain transactions that occurred "at any time." The Court finds that those requests should go back no farther than ten years before CresCom issued the subpoena. Thus, Mr. Terry's overbreadth and undue-burden objections are sustained in part and overruled in part.

Fourth, Mr. Terry objected to several requests on the ground that that they were redundant of others that he had already answered. The Court agrees that requests 31, 33, and 37 are redundant. However, the other requests to which he objects are not redundant at all or merely overlap somewhat with other requests. Therefore, the Court sustains Mr. Terry's objection as to the three requests identified above but overrules the objection in all other instances.

Fifth, Mr. Terry objected to a request on the ground that it sought information that is a matter of public record. That objection has been so widely rejected that, in most instances, making it borders on frivolity. *See, e.g.*, *Gross v. Guzman*, No. 11-23028-CIV, 2013 WL 12091159, at *5 (S.D. Fla. Jan. 25, 2013) (stating courts have generally held that the "matter of public record" objection usually is inappropriate, and collecting cases); *Jackson v. W. Va. Univ. Hosps., Inc.*, No. 1:10CV107, 2011 WL 1831591, at *2 (N.D. W. Va. May 12, 2011) (stating "courts have unambiguously stated that" the public-record objection "is insufficient to resist a discovery request," and collecting cases). The objection is therefore overruled.

Finally, Mr. Terry answered several requests with "none." In one of his briefs opposing supplementary proceedings, Mr. Terry explains he used that answer when he did not possess the documents or information requested. However, in keeping with Federal Rule of Civil Procedure 45(a)(1)(A)(iii), the subpoena stated clearly that Mr. Terry was to produce documents that were in his "possession, custody, [or] control, or are otherwise available to" him. (Subpoena Ex. A, ECF No. 105-3, at 6.) It was flatly inappropriate for Mr. Terry to confine his responses to materials within his possession. He must also produce requested materials within his custody or control.

In sum, CresCom's request to enforce its document subpoena to Mr. Terry is granted in part and denied in part. With the exception of documents covered by a sustained objection, Terry shall produce all requested documents to CresCom no later than July 21, 2017. Thereafter, Mr. Terry shall appear in South Carolina for the continuation of his deposition no later than July 28, 2017.

### III. Subpoenas to Mrs. Terry

CresCom seeks to enforce two subpoenas—one for a deposition and another for the production of documents and other items—it issued to Mrs. Terry last December.

It is not clear whether CresCom is asking this Court to enforce the deposition subpoena. To the extent it is, the issue of whether that subpoena should be enforced is academic. In a telephone

conference on January 5 of this year, CresCom and Mrs. Terry agreed, through counsel, that Mrs. Terry would be deposed at a time and place of her choosing. Nothing before the Court indicates that Mrs. Terry has since affirmatively refused to participate in the taking or planning of such a deposition or that CresCom has tried to compel her deposition at a time or place to which she did not consent. There simply is no active controversy over her deposition.[5]

As for the document subpoena, Mrs. Terry raises several arguments in opposition to it. The Court, however, finds all of them waived. A person commanded via subpoena to produce documents or other items may serve written objections to the subpoena. Fed. R. Civ. P. 45(d)(2)(B). The objections must be served before the earlier of the time specified for compliance or fourteen days after the subpoena is served. *Id.* "'The failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.'" *E.g.*, *Wellin v. Wellin*, No. 2:13-cv-1831-DCN, 2014 WL 3496514, at *4 (D.S.C. July 14, 2014) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)).

Nothing in the extensive briefing and record before the Court indicates that Mrs. Terry ever served such objections to CresCom, and the Court sees no reason not to find them waived. To the contrary, the arguments Mrs. Terry now raises in response to CresCom's motion are near-verbatim recitals of the arguments she made in her defective motion to quash. She was free to reassert those arguments in a renewed motion, but she did not do so. To allow her, months later, to revive those arguments in a response brief would undermine Federal Rule 45(c)(2)(B), its attendant waiver rule, and Local Rule 7.02. Accordingly, the Court grants CresCom's request to enforce the document

---

5. CresCom states in its motion that "it has become apparent that Mrs. Terry has now instructed her counsel that she is refusing to have her deposition taken at any time and/or any location." (Mot. Supp. Proceedings, ECF No. 102, at 4.) The Court does not see support for that assertion. The last communication in the record regarding Mrs. Terry's deposition appears to be a February 3, 2017 email from one of CresCom's lawyers proposing that the deposition take place on one of several dates in late February or early March. Nothing in the record shows what, if anything, transpired after that.

subpoena for Mrs. Terry. She shall produce the requested items to CresCom's attorneys no later than July 21, 2017.

### IV. Injunction

As mentioned, this Court previously issued an order temporarily enjoying Mr.Terry from alienating or harming any of his property that is not exempt from execution. That injunction shall continue to be in effect until such time that the Court sees cause to modify or dissolve it.

### V. Other Relief

CresCom asks that Mr. Terry's property be attached and then applied towards satisfying the judgment debt. The Court declines to order such relief until CresCom identifies specific property subject to attachment and levy. Likewise, the Court declines at this time to order the various forms of contingent relief CresCom has requested. Because CresCom seeks that relief expressly in the event that the Terrys continue not complying with the subpoenas, the request is premature. Thus, the remainder of CresCom's motion is denied without prejudice.

Finally, the Terrys ask the Court to award them attorney's fees and costs in resisting CresCom's motion. Those requests are denied.

## CONCLUSION

For the foregoing reasons, CresCom's motion for supplementary proceedings is **GRANTED IN PART** and **DENIED IN PART**. CresCom may renew its requests when appropriate.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**July 6, 2017**
**Charleston, South Carolina**