IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| CresCom Bank, successor by merger to Community FirstBank, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: 2:12-cv-63-PMD |
| v. | ) ) ) | **ORDER** |
| Edward L. Terry; Harris Street, LLC, n/k/a CCT Reserve, LLC; Sugarloaf Marketplace, LLC; and CCT Reserve, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

This matter is before the Court on three motions. First, Plaintiff CresCom Bank asks the Court to hold Defendant Edward L. Terry and his wife, Elaine C. Terry in contempt for refusing to comply with an order the Court issued in this case on July 6, 2017 (ECF No. 123). Second, the Terrys asks the Court for permission to file a sur-reply in the briefing on CresCom's contempt motion (ECF No. 131). Finally, the Terrys ask the Court to alter, amend, or clarify its July 6 order (ECF No. 124). For the following reasons, the Court grants the motion for leave to file a sur-reply, denies the motion to alter, amend, or clarify, and defers a decision on the contempt motion.

**DISCUSSION**

    **I.**    **Motion to Alter, Amend, or Clarify**

        **A.**    **Timeliness of Motion**

The Terrys state they seek relief under Rules 54(b) and 59(e) of the Federal Rules of Civil Procedure. The Court is not persuaded that either rule applies. Rule 59(e) motions must be made twenty-eight days after entry of a final judgment. The Court's July 6 order was not a final judgment; rather, the latest final judgment was entered over a year ago. Thus, a Rule 59(e) motion would be untimely. So too with a motion under Rule 54(b). That rule allows courts to modify interlocutory

orders before entry of final judgment. Although the July 6 order was interlocutory, it was entered long after final judgment. *Cf. Moore v. Lightstorm Entm't*, No. CV RWT-11-3644, 2017 WL 219368, at *1 (D. Md. Jan. 19, 2017) (stating Rule 54(b) does not apply to orders compelling post-judgment discovery because it expressly allows modification of interlocutory orders *before* entry of final judgment).

There appears to be an absence of authority on the deadline for seeking reconsideration of a post-judgment discovery order. *See Moore*, 2017 WL 219368, at *1 (noting the "absence of a rule on point" in this circuit). Nonetheless, the Court views the Terrys' motion as untimely. The July 6 order required that the Terrys produce documents by July 21 and that Mr. Terry appear for a deposition by July 28. The Terrys, however, did not file their motion until August 3, well after those deadlines had expired. Under Local Civil Rule 7.03—a rule the Court cited in its July 6 order—motions should be filed "immediately after the issues raised thereby are ripe for adjudication." Local Civ. Rule 7.03 (D.S.C.). The issues the Terrys raise in their motion became ripe when the Court entered the July 6 order. Filing their motion nearly a month later—and after the order's deadlines expired—was in no way consistent with Rule 7.03.

The untimeliness of the Terrys' motion is a sufficient basis for denying it. Out of an abundance of caution, however, the Court will address the motion on its merits.[1]

### B. Mrs. Terry

The Court's July 6 order, as it relates to Mrs. Terry, concerns her refusal to respond to a document subpoena that CresCom issued last December. Although Mrs. Terry raised several

---

1. As the court in *Moore* noted, it is also unclear what legal framework courts should use in analyzing motions to reconsider post-judgment discovery orders. 2017 WL 219368, at *1. The court used the framework for Rule 54(b) motions, in which courts may amend interlocutory orders only where "(1) there has been an there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Id.* (citation and internal quotation marks omitted). The Terrys believe that framework applies here. Although their belief is based on the incorrect view that Rule 54(b) governs their motion, the Court will nonetheless assume *arguendo* that its framework applies.

arguments in defense of her refusal, the Court found them to be untimely because she failed to properly assert them within the deadline set forth in Federal Rule of Civil Procedure 45(d)(2)(B). Consequently, the Court concluded, the arguments were waived.

Mrs. Terry claims the Court's waiver decision was clearly erroneous. First, she argues she could not have waived her argument because the subpoena was never properly served on her and thus she never had an enforceable deadline for objecting to the subpoena.[2] Subpoenas are served by "delivering" a copy to the person named therein. Fed. R. Civ. P. 45(b)(1). In this case, a process server went to a house that Mrs. Terry's company owns and that the Terrys use as a vacation home, and handed the subpoena to Mr. Terry. Mrs. Terry argues that did not constitute delivery because Rule 45(b)(1) requires personal service. The Court disagrees. The process server's method of delivery was reasonably calculated to ensure Mrs. Terry received the subpoena. Indeed, despite numerous opportunities to do so, Mrs. Terry has never asserted that she did not actually get the subpoena in a timely fashion. The circumstances present in this case constituted delivery. *See, e.g.*, *Phillips v. Ottey*, No. CV DKC 14-0980, 2016 WL 6582647, at *2 n.5 (D. Md. Nov. 7, 2016) ("The United States Court of Appeals for the Fourth Circuit has not addressed whether a non-party subpoena must be personally served, but courts in this district have focused on whether the recipient has received 'actual notice' of the subpoena." (citation omitted)); *Bland v. Fairfax Cty.*, 275 F.R.D. 466, 471–72 (E.D. Va. 2011) (holding Rule 45(b) does not require "personal service to the exclusion of other manners of service" so long as "the non-personal service was effected by means reasonably sure to complete delivery"); *In re Falcon Air Exp., Inc.*, No. 06-11877, 2008 WL 2038799, at *2–3 (Bankr. S. D. Fla. May 8, 2008) (rejecting "as antiquated the so-called majority position interpreting Rule 45 as requiring personal service," and instead adopting "the better-reasoned, modern, emerging minority

---

2. This argument is closely related to Mrs. Terry's argument, which this Court found waived, that the subpoena is unenforceable because it was not properly served.

3

position, which holds that substitute service of a subpoena is effective on a nonparty witness under Rule 45" and finding permissible a subpoena served on a party's wife at a residence owned by him); *Hall v. Sullivan*, 229 F.R.D. 501, 505 (D. Md. 2005) (holding that Rule 45(b) does not require personal service).

Mrs. Terry next asserts CresCom's lawyers withdrew the subpoena in January 2017 and then improperly tried to enforce it by moving for supplementary proceedings several weeks later. Accordingly, she contends, she could not have waived her arguments because there was no active subpoena to which she could object. She further argues that even if CresCom's lawyers did not actually withdraw the subpoena, her arguments should not be deemed waived because they led her to believe they would do so.

CresCom vigorously disputes Mrs. Terry's arguments. It denies that it ever withdrew the subpoena or that its lawyers said or did anything that would have led her to believe the subpoena was withdrawn.

The record contains conflicting evidence about what counsel in this case discussed in regards to the subpoena. However, the Court need not resolve that conflict. Its existence defeats Mrs. Terry's argument that the Court made a clear error. Moreover, even if the Court did clearly err on this issue, the remedy for such an error would be to address the arguments the Court previously found waived. As explained below, those arguments lack merit.

Mrs. Terry's first ground for opposing the subpoena is that the Court lacks personal jurisdiction over her. Specifically, she contends any exercise of personal jurisdiction in this case would violate her right to due process. The Court disagrees. CresCom seeks discovery from Mrs. Terry as part of its larger attempt to determine what assets are available for collecting on its judgment against Mr. Terry. Based on the information it has obtained thus far, CresCom believes Mrs. Terry was involved in a number of illegitimate asset transfers designed to put Mr. Terry's assets beyond the

reach of CresCom and other judgment creditors. CresCom has made a colorable showing that Mrs. Terry owns and controls entities that own several pieces of real estate in South Carolina, and that at least one of those companies was involved in a conveyance of South Carolina real estate that may be fraudulent or otherwise voidable. Because those contacts with South Carolina relate directly to CresCom's efforts to investigate Mrs. Terry and her entities, the Court has specific personal jurisdiction over her. *See, e.g.*, *Application to Enforce Admin. Subpoenas of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (applying the traditional specific-jurisdiction test to a nonparty by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue, and then finding court had specific jurisdiction where the subpoena at issue "ar[ose] out of [the nonparty's] contacts" with the forum).[3]

Mrs. Terry's second ground is that CresCom did not properly serve it upon her. The Court has rejected that argument above.

Mrs. Terry's third ground is that the subpoena improperly commanded her to produce documents beyond the 100-mile territorial limitation on production in Rule 45(c)(2)(A).[4] Fernandina Beach, Florida, where Mrs. Terry claims she lives, is more than 100 miles from Charleston, South Carolina, the place for document production specified in the subpoena. The record lacks adequate information for the Court to determine whether Mrs. Terry "is employed[] or regularly transacts

---

3. There appears to be widespread disagreement, and scant authoritative guidance, as to how courts should analyze whether they have personal jurisdiction over nonparty witnesses. *See* Ryan W. Scott, Note, *Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for Nonparty Discovery*, 88 Minn. L. Rev. 968, 981 (2004). CresCom and Mrs. Terry have both addressed the issue as one of due process, using the familiar minimum-contacts framework. The Court assumes *arguendo* that framework is the proper one to apply here.

4. Mrs. Terry's argument seems to confuse several different issues. After citing Rule 45(c)(2)(A), which restricts the locations where compliance with a subpoena may be required, nearly all of the cases she cites, as well as most of the assertions she makes, relate to restrictions on which court may issue a subpoena and on where subpoenas may be served. Because it is not clear which argument Mrs. Terry is actually making, the Court notes that it was the proper court to issue the subpoena, *see* Fed. R. Civ. P. 45(a)(2), and that any argument Mrs. Terry may be making about the territorial limits of service would be meritless, *see* Fed. R. Civ. P. 45(b)(2).

business in person" within 100 miles of Charleston. Fed. R. Civ. P. 45(c)(2)(A). However, even assuming *arguendo* that she does not meet either of those criteria, her position still lacks merit.

A number of courts have held that Rule 45(c)(2)(A)'s 100-mile boundary does not apply where, as here, the subpoenaed person is not instructed to also appear at the production location along with the requested documents. *See, e.g.*, *Perez v. Kazu Constr., LLC*, No. CV 16-00077 ACK-KSC, 2017 WL 628455, at *12 (D. Haw. Feb. 15, 2017); *United States v. Brown*, 223 F. Supp. 3d 697, 703 (N.D. Ohio 2016); *Trahan v. Sandoz Inc.*, No. 3:13-CV-350-J-34MCR, 2014 WL 12628614, at *3 (M.D. Fla. July 23, 2014); *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. 13CV1395-GPC BLM, 2014 WL 3573400, at *4 (S.D. Cal. July 18, 2014); *Walker v. Ctr. for Food Safety,* 667 F.Supp.2d 133, 138 (D.D.C. 2009). Those decisions are based on language, currently found in Rule 45(d)(2)(A), which provides that "[a] person commanded to produce documents . . . need not appear in person at the place of production . . . unless also commanded to appear for a deposition, hearing, or trial."[5] Other courts, however, have focused on Rule 45(d)(3)(A)(ii), which requires that a subpoena be either quashed or modified if it requires the subpoenaed person to comply at a location beyond Rule 45(c)(2)(A)'s 100-mile boundary. *See, e.g.*, *D'Souza v. Marmaxx Operating Corp.*, No. EP-15-CV-00256-DCG, 2017 WL 1322243, at *6 (W.D. Tex. Apr. 7, 2017); *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 696–97 (N.D. Ga. 2016); *Westmore Equities, LLC v. Vill. of Coulterville*, No. 3:15-CV-241-MJR-DGW, 2016 WL 695896, at *2 (S.D. Ill. Feb. 22, 2016). The courts focusing on that rule have tended to do so while keeping in mind the expectation of cooperation among those involved in the subpoena and the practical reality that production will typically be accomplished electronically or by mail. *See D'Souza*, 2017 WL 1322243, at *6 (ordering parties to "confer and agree on a proper place and a cost-effective method of production, including electronic means"); *Sams*, 316 F.R.D. at 697 (allowing subpoenaed company to either produce documents at its office or to email them); *Westmore Equities,*

---

5. Prior to the 2013 amendment of Rule 45, that language appeared in Rule 45(c)(2)(A).

*LLC*, 2016 WL 695896, at *2 (noting the practical reality and discussing the expectation that lawyers "**cooperate** and use **common sense** to facilitate the sensible production of documents and ESI"); *see also* Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment (stating that "parties often agree that production, particularly of electronically stored information, be transmitted by electronic means" and that Rule 45(c)(2)(A) does not prevent them from making such arrangements).

The Court need not attempt to reconcile or choose between these two lines of cases; neither supports Mrs. Terry's contention that the subpoena cannot be enforced. Mrs. Terry's contention clearly lacks merit under the first line of cases. If the Court followed the second line of cases, the appropriate action would be to allow Mrs. Terry to produce the records either electronically or at a physical location closer to Fernandina Beach.[6]

Finally, Mrs. Terry opposes the subpoena on the ground that it was overly broad, unduly burdensome, and seeks irrelevant materials. The Court disagrees. As the Court stated in its July 6 order, the scope of examination in post-judgment discovery "is very broad, as it must be if the procedure is to be of any value." 12 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3014 (2d ed. 1997); *see also Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014) (stating the rules governing post-judgment discovery are "quite permissive"). Moreover, although Mrs. Terry is not a party, CresCom may engage in "probing questioning" because she is Mr. Terry's wife, she apparently pays his living expenses, and she is involved in the transactions that CresCom claims are illegitimate. *See Federal Practice and Procedure* § 3014 ("The judgment creditor is allowed discovery to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution."). In light of those standards, and based on the record in this case, the Court concludes that the materials CresCom

---

6. CresCom has offered to let Mrs. Terry accomplish production by email, by mail, or by drop-off at any place convenient for Mr. Terry. The Court encourages Mrs. Terry and CresCom to discuss that offer and come to an agreement without delay.

seeks through its supplementary proceedings motion[7] are relevant, that CresCom's requests are not overly broad, and that compliance will not be unduly burdensome or expensive. The Court rejects Mrs. Terry's arguments as to the scope of CresCom's desired discovery.

In sum, the Court sees no basis for altering its July 6 order as to Mrs. Terry.

### C. Mr. Terry

In its July 6 order, the Court instructed Mr. Terry to produce documents by July 21 and to appear for a deposition by July 28. Mr. Terry argues the Court should have limited the command for document production to the categories of documents CresCom identified in a January 20, 2017 letter CresCom's counsel sent to the Terrys' attorneys. Those categories covered some, but not all, of the documents CresCom had previously sought from Mr. Terry through formal discovery requests and through a document subpoena. Mr. Terry had partially responded to those requests and that subpoena, but he had also asserted objections to them.

The premise of Mr. Terry's argument is that July 6 order requires him to produce documents and information that exceed the scope of the January 20 letter. That premise is mistaken. The parties' briefs on CresCom's supplementary proceedings motion made clear that CresCom was seeking only what the January 20 letter covered and that Mr. Terry was standing by all of his previous objections because they were applicable to the January 20 letter. To be sure, the July 6 order does not explicitly say it covered only the issues the parties had put before it; however, the Court did not believe it needed to state the obvious.

### D. New Time for Compliance

As mentioned, the deadlines in the July 6 order have expired. Having found no merit to the Terrys' motion to alter or clarify that order, the Court sets new deadlines: the Terrys shall complete

---

7. The scope of those materials is narrower than the full range of materials identified in the subpoena. Rather, CresCom made clear in its supplementary proceedings motion that it is seeking only the types of documents and information it identified in a January 20, 2017 letter to the Terrys' attorneys. *See* Section I.C *infra*.

the previously ordered document production by September 15, 2017. Mr. Terry shall appear for the continuation of his deposition by September 22, 2017.

## II. Motion for Contempt[8]

CresCom asks the Court to hold the Terrys in contempt for not complying with the July 6 order. CresCom seeks several types of contempt sanctions, including attorney's fees, costs, fines, expanded discovery, a receivership, and imprisonment. For the most part, the Terrys' briefs in opposition to CresCom's motion simply rehash the arguments in their motion to alter or amend, which the Court has rejected above. Moreover, given that Mr. Terry's only objection to the July 6 order was its perceived scope, it is curious that Mr. Terry never attempted to comply with it at all. However, as the Terrys currently have one more chance to comply with the July 6 order, it would be premature to address the contempt motion at this time. Consequently, the Court defers its decision on the motion. After the compliance deadlines have expired, each side shall submit one supplemental brief addressing only what occurs after entry of this order. CresCom's brief shall be filed by September 29. The Terrys' brief shall be filed by October 6.

## III. Costs and Attorney's Fees

Both sides have requested awards of costs and attorney's fees on the motion to alter or amend and on the contempt motion. In light of the above, an award on the contempt motion is premature. As for the motion to alter or amend, the Terrys' request is denied; their motion lacked any merit. In all other respects, the Court defers a decision on the requests until after it resolves the contempt motion.

---

8. The Court grants the Terrys' motion for leave to file a sur-reply on CresCom's contempt motion. The Court notes, however, that the Terrys have made it standard practice to submit sur-replies in this case. Although the Court has, in the interest of creating a thorough record, allowed the Terrys to file those sur-replies in the past, the Court will not be so permissive in the future. Going forward, no request for leave to file a sur-reply will be granted absent a compelling showing of extraordinary circumstances. Moreover, proposed sur-replies shall not be attached to any such requests.

### IV. Local Civil Rule 7.02 Certifications

Finally, neither the motion to alter or amend nor the motion for contempt contained a certification that, prior to filing those motions, counsel had tried in good faith to resolve the issues raised therein. *See* Local Civ. Rule 7.02 (D.S.C.). The Court has previously denied a motion in this case without prejudice for failure to comply with that requirement. In the interest of addressing the motions quickly, the Court elected not to enforce that requirement in this instance. It will not do so in the future. Likewise, if this Order is not complied with FULLY, the Court will not hesitate to exercise its powers fully.

### CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Terrys' motion to alter, amend, or clarify is **DENIED** and that the Terrys' motion for leave to file a sur-reply is **GRANTED**. As discussed above, the Court **DEFERS** its decision on CresCom's contempt motion.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**August 31, 2017**
**Charleston, South Carolina**